VILLAGE OF RANDOM LAKE, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

DEPARTMENT OF EMPLOYE TRUST FUNDS, Defendant,

Patrick GILLETTE, Defendant-Co-Appellant.

Court of Appeals

No. 87–0264. Submitted on briefs August 26, 1987.—Decided September 23, 1987.

(Also reported in 415 N.W.2d 577.)

On behalf of the defendant-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Lowell E. Nass,* assistant attorney general.

On behalf of the defendant-co-appellant the cause was submitted on the brief of *Michael H. Gillick* of *Gillick, Murphy, Gillick & Wicht,* of Milwaukee.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Daniel L. Sargeant* of *Schloemer, Schlaefer, Alderson, Seefeldt & Spella, S.C.,* of West Bend.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Patrick Gillette and the Labor and Industry Review Commission (LIRC) appeal from a judgment of the circuit court reversing a LIRC award of duty disability benefits to Gillette against his former employer, the Village of Random Lake. Gillette argues that LIRC's award should be reinstated. LIRC concedes that the circuit court properly vacated

the award but argues that the court erred in remanding the matter to LIRC for dismissal of Gillette's application. We agree with LIRC. Therefore, we reverse only the remand portion of the circuit court order and affirm the balance of the order. We remand the matter to the circuit court with directions to further remand to LIRC for additional proceedings consistent with this opinion.

## FACTS

The issues in this case do not present any substantial dispute concerning the facts. Therefore, we recite the essential facts as found by LIRC.

Gillette commenced working for the Village of Random Lake as a one-man police department on August 1, 1980. His assignment was to reduce crime in the area, improve public relations, perform criminal investigations, patrol the village, testify when necessary and perform required clerical work. Gillette was on call twenty-four hours a day and on occasion worked eighty to ninety hours per week. He never had the assistance of any other police officer except for a short period at the commencement of his employment when he worked with the officer he was replacing. In December 1981, Gillette supervised without any additional police assistance a village picnic attended by about 8000 people.

During the term of his employment, Gillette had many disputes with the village board. These disagreements concerned the police department budget, fees and revenues, and salary. Gillette also received conflicting opinions from various board members as to his duties and their expectations of him. In November 1981, the village indicated it was considering entering

into a contract with the county for police services—an action which would eliminate Gillette's job. Gillette tried unsuccessfully to negotiate a new employment contract with the village. Citing chronic depression and anxiety disorder, Gillette retired from his position on December 12, 1981.

## ADMINISTRATIVE PROCEEDINGS

### Proceedings Before the Examiner

On January 13, 1982, Gillette filed for benefits under the Worker's Compensation Act, ch. 102, Stats., and for duty disability benefits pursuant to sec. 66.191, Stats. (1981–82). The worker's compensation action was resolved by a compromise agreement and does not concern this appeal. By letter of June 23, Gillette broadened his duty disability claim to sec. 40.65, Stats., a statute which was not scheduled to become effective until July 1, 1982, when sec. 66.191, Stats. (1981–82), was also scheduled to be repealed. The effect of this change in the law was, among other things, to increase duty disability benefits from fifty percent to eighty percent of the applicant's monthly salary and to shift responsibility for administration of the program from the Department of Industry, Labor and Human Relations to the Department of Employe Trust Funds.[1]

The examiner determined that Gillette had sustained injury arising out of and while performing services incidental to his employment. The examiner

[1]For this reason, the Department of Employee Trust Funds is named as a defendant in the action, although it has not actively participated in the proceedings.

awarded Gillette duty disability benefits pursuant to sec. 40.65, Stats.

## Proceedings Before LIRC

Both Gillette and the village petitioned LIRC for review of the examiner's order. Gillette contended that the examiner erred in awarding benefits under sec. 40.65, Stats.[2] The village contended that the examiner erred in failing to apply the evidentiary test set forth in *School District No. 1 v. DILHR*, 62 Wis. 2d 370, 215 N.W.2d 373 (1974), requiring that nontraumatic mental injury result from a situation of greater dimension than the day-to-day emotional strain and tension which all employees experience. *Id.* at 377–78, 215 N.W.2d at 377.

LIRC agreed with Gillette that the examiner had erroneously and prematurely awarded benefits under sec. 40.65, Stats. LIRC amended the order to provide benefits under sec. 66.191, Stats. (1981–82). This issue is not before us on this appeal. LIRC also rejected the village's contention that the examiner's order was improper under the evidentiary test of *School District No. 1* and affirmed the balance of the examiner's order awarding duty disability to Gillette. It is this ruling which prompted judicial review in the circuit court.

---

[2]Comparing sec. 40.65, Stats., and repealed sec. 66.191, Stats. (1981–82), we observe that the former gives Gillette higher benefits than the latter, a fact also noted by the examiner in his findings. We presume this is the reason Gillette's predecessor counsel broadened the initial application to include a sec. 40.65 claim. We can only assume that Gillette's decision to appeal the examiner's order represents a concession that, despite the favorable terms, the controlling statute was sec. 66.191, Stats. (1981–82).

## PROCEEDINGS IN THE CIRCUIT COURT

The village appealed LIRC's order to the circuit court. The court concluded that the examiner had erred in failing to apply the *School District No. 1* test. The court also observed that LIRC, in affirming the examiner's order on this issue, "did not state what standard they were applying."[3] The court went on to state that "it cannot be assumed that the Commission applied the correct standard without saying so." Finally, the court observed:

> The examiner found that the proof submitted did not meet the unusual stress criteria. As stated, the Commission did not reverse or modify the examiner's finding as to liability. It made the same finding, presumably for the same reasons determined by the examiner which included the application of an erroneous criteria on which to base the finding.
>
> Therefore the Commission's finding does not meet the required legal standard ... .
>
> The facts as presented is [sic] insufficient to support the Commission's findings because the Commission applied the improper legal standard in applying those facts.

Because of this perceived error, the circuit court remanded the matter back to LIRC with instructions to dismiss Gillette's application for benefits.

---

[3]The extent of LIRC's language on this issue was:

The above modification of the Findings of Fact and Order of the examiner makes no change in the finding that the applicant sustained injury arising out of and while performing services incidental to his employment with the respondent making him eligible for retirement.

## ISSUES ON APPEAL

### The Proper Standard For A Duty Disability Claim

In his appeal, Gillette argues that the circuit court erred in its conclusion that the standard of *School District No. 1* applies in a duty disability case. In that case, the Wisconsin Supreme Court set forth the test for establishing liability under sec. 102.03(1)(e), Stats., of the Worker's Compensation Act, providing coverage "[w]here the accident or disease causing injury arises out of his employment." The supreme court held that:

> [M]ental injury nontraumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience. Only if the "fortuitous event unexpected and unforeseen" can be said to be so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury will liability under ch. 102, Stats., be found.

*Id.* at 377–78, 215 N.W.2d at 377. The rule was necessary, the court reasoned, in order to provide an "effective means of evaluating an employee's claim of mental injury" and to avoid opening "the floodgates to numerous fraudulent claims of mental injury." *Id.* at 377, 215 N.W.2d at 377. *School District No. 1* was reaffirmed in a later case, *Swiss Colony, Inc. v. DILHR*, 72 Wis. 2d 46, 240 N.W.2d 128 (1976).

Although both *School District No. 1* and *Swiss Colony* were worker's compensation cases under ch. 102, Stats., the public policy behind the fashioning of the rule—the necessity for an effective means of

evaluating nontraumatic mental injury cases and to avoid the prospect of a substantial number of fraudulent claims—also exists in duty disability cases under sec. 66.191, Stats. (1981–82), or sec. 40.65, Stats. The lack of specific statutory language in ch. 102 imposing this limitation on work related mental injury claims did not deter the supreme court from fashioning this rule in *School District No. 1*.[4] Nor does it deter us here where the same considerations are present.

Therefore, the circuit court correctly concluded that the examiner had applied the wrong standard. We also agree with the court that LIRC failed to specify what standard it was applying in affirming this portion of the examiner's order. As the court noted, it cannot be assumed that LIRC applied the correct standard, particularly where it appears more likely that it applied the same erroneous standard as the examiner.

## THE REMAND

Having concluded that the circuit court properly determined that this matter must be remanded to LIRC, we now consider whether the directive of the remand—dismissal of Gillette's application—was proper. Both Gillette and LIRC appeal on this issue.

[4] The *School District No. 1* test was later codified in sec. 102.01(2)(c), Stats., sec. 3, ch. 92, Laws of 1981:

"Injury" includes mental harm or emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to occupational or nonoccupational life.

The essential thrust of the circuit court's decision was to conclude that the examiner had utilized an incorrect standard and that LIRC *probably* did likewise. However, as the court noted, this could not be said with certainty. When the circuit court resolved the issue of the proper standard to be applied, the stage was then set, *for the first time in these proceedings,* for the application of that test to the facts. Whether this exercise is for further findings of fact, as LIRC contends, or whether it is for an application of facts already determined to this standard does not alter our conviction that determinations properly made by an administrative agency in the first instance have yet to be performed in this case. Without such determinations, this court cannot give the required weight to the administrative agency's value judgment based upon its expertise. *See Esparza v. DILHR,* 132 Wis. 2d 402, 406, 393 N.W.2d 98, 100 (Ct. App. 1986).

LIRC's error lies not in having applied the wrong legal standard but in having failed to identify what standard it did apply. Justice and fairness require that this process be allowed to work. The circuit court's remand with directions to dismiss Gillette's application short-circuits this process.

We reverse the remand portion of the circuit court order. We affirm the balance of the order. We remand this matter to the circuit court with directions to remand to LIRC for further proceedings consistent with this opinion.[5]

---

[5]The village contends that we should remand this matter to the circuit court for further proceedings in that forum if we conclude the circuit court's remand order was improper. The

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.

village, however, does not specify what further proceedings are necessary in the circuit court. We have searched the record in an effort to determine for ourselves what proceedings in the circuit court are necessary. We have located nothing which indicates that anything further remains to be determined by the circuit court in light of our ruling herein. Therefore, we conclude that an ultimate remand to LIRC is appropriate.