KIMBERLY-CLARK CORPORATION, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION and George Sitter, Defendants-Appellants.

Court of Appeals

No. 86–0835. Submitted on briefs November 11, 1986.—Decided March 4, 1987.

(Also reported in 405 N.W.2d 684.)

On behalf of the defendant-appellant, Labor and Industry Review Commission, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *James P. Altman,* assistant attorney general.

On behalf of the defendant-appellant, George Sitter, the cause was submitted on the briefs of *Miriam R. Horwitz,* of *Zubrensky, Padden, Graf & Maloney* of Milwaukee.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Joseph J. Beisenstein* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.* of Appleton.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. The Labor and Industry Review Commission (LIRC) appeals a circuit court judgment reversing an order of LIRC. In an order dated July 12, 1985, LIRC had affirmed a hearing examiner's order requiring self-insured Kimberly-Clark Corporation (Kimberly-Clark) to pay George Sitter (Sitter) a cer-

tain sum as compensation for an occupational hearing loss. Kimberly-Clark was also ordered to pay a $5000 penalty under sec. 102.18(1)(bp), Stats., and Wis. Adm. Code § Ind 80.70(2) for failure to pay compensation when the claim was not "fairly debatable." The trial court concluded that the claim was fairly debatable and reversed that portion of LIRC's order. We conclude that the trial court was in error and that the record supports LIRC's conclusion that Sitter's claim was not fairly debatable, and therefore we reverse and direct that the penalty be reinstated.

Sitter was an employee of Kimberly-Clark for nearly forty-one years, working as a material handler/stockman. Sitter retired, his last day of work being December 30, 1983. Sitter had worked at two different warehouse/loading docks. Two machines were located above the first warehouse area. The machines produced a constant high-pitched whine and additional noise came from other sources. No ear protection was provided. Sitter worked in that area for thirty-eight years. The second warehouse was located under a multifold machine which produced a rumbling vibration as well as a chopping and thumping noise. In the second warehouse, it was difficult to hear a co-worker's conversation from five to six feet away.[1] Ear protection was provided, but because of the nature of his employment—frequent use of the telephone—he needed to remove his earmuffs repeatedly. Sitter worked in the second warehouse area for nearly three years. Beginning in 1958 and periodically thereafter, Kimberly-Clark tested Sitter's hearing. The tests,

---

[1]At the compensation hearing, there was also testimony to the effect that while the first warehouse was noisy, the second was the noisier of the two.

known as audiograms, showed a progressive hearing loss.

Sitter filed an application for compensation on March 26, 1984, three months after he retired. Kimberly-Clark filed its denial of benefits on April 9, 1984 and continued to refuse to pay benefits up to the time of the worker's compensation hearing. Sitter was seen by an otolaryngologist, Dr. David Wineinger, on May 4, 1984 and by Kimberly-Clark's expert, Dr. Rex Gromer, on May 18, 1984. Both physicians concurred, their diagnosis being bilateral sensorineural hearing loss caused by Sitter's exposure to occupational noise.

Seven months after Sitter's retirement and three months after the denial of the claim, Kimberly-Clark measured noise levels throughout the mill where Sitter had worked. No testing was done at the first warehouse because it was no longer being used. The tests revealed a weighted average of 73.4 to 76.3 decibels in the second warehouse.[2]

The hearing examiner determined that the opinions of Drs. Wineinger and Gromer were persuasive and found an occupational hearing loss of 43.5%. The examiner went on to find an inexcusable delay in payment of benefits and imposed a $5000 penalty. The examiner stated: "A medical opinion becomes 'fairly debatable' when countered by another medical opin-

---

[2]The tests were performed by Anthony Gasper, a corporate industrial hygienist. Several types of testing equipment were used, including dosimeters, noise level meters, and octave band analysis. The tests were performed when the machinery in the mill was running at full speed because that is when the machinery is the noisiest. Gasper was not at the hearing. Any evidence of this testing came in via the hearsay testimony of James McDonnell, Kimberly-Clark's health and safety director at the time of the hearing.

ion. An account of an occurrence of an injury can be disputed by a conflicting description. Under these circumstances, this claim was never fairly debatable and a penalty should be assessed ...." LIRC, upon review of the record as well as the findings and order of the hearing examiner, affirmed the examiner's order. Kimberly-Clark sought review under sec. 102.23, Stats. The circuit court concluded that the testing done by Kimberly-Clark discredited the facts upon which the medical opinions of Drs. Wineinger and Gromer were based. Thus, the circuit court concluded that these opinions were subject to attack and the claim, therefore, became fairly debatable. The court also held the examiner's statement that a medical opinion becomes "fairly debatable" when countered by another medical opinion to be only partially correct and reversed LIRC's finding of bad faith.

This case places the issue of what is a "fairly debatable" claim within the meaning of sec. 102.18(1)(bp), Stats., and Wis. Adm. Code § Ind 80.70(2) before this court for the first time by challenging a hearing examiner's finding of bad faith. Wisconsin courts have traditionally interpreted sec. 102.03(2), Stats., the section which provides that the right to recover compensation under the worker's compensation chapter shall be the exclusive remedy against an employer, as barring an employee's tort claim against an employer. However, in *Coleman v. American Universal Ins. Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979), the Wisconsin Supreme Court concluded that sec. 102.03(2) did not bar an employee from maintaining a tort action for bad faith denial of compensation benefits. The legislature reacted to the *Coleman* decision by enacting sec. 102.18(1)(bp), placing the bad

faith cause of action within the Worker's Compensation Act once again. Section 102.18(1)(bp) provides that:

> The department may include a penalty in its final award to an employe if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith. The department may award an amount which it considers just, not to exceed the lesser of 200% of total compensation due or $15,000. The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

Pursuant to the power granted by sec. 102.18(1)(bp), Stats., the department adopted Wis. Adm. Code § Ind 80.70(2) defining bad faith as follows:

> An insurance company or self-insured employer who, without credible evidence which demonstrates that the claim for the payments is fairly debatable, unreasonably fails to make payment of compensation or reasonable and necessary medical expenses, or after having commenced those payments, unreasonably suspends or terminates them, shall be deemed to have acted with malice and in bad faith.

This court owes no deference to the decision of the circuit court when reviewing an administrative agency's decision. *Esparza v. DILHR,* 132 Wis. 2d 402, 405, 393 N.W.2d 98, 100 (Ct. App. 1986). It has often been

said that one of the more troublesome problems in administrative law is to determine whether the application of a statutory concept to a concrete fact situation should be treated as a question of fact or law for the purposes of judicial review. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115, 287 N.W.2d 763, 768 (1980); *Nigbor v. DILHR,* 120 Wis. 2d 375, 383, 355 N.W.2d 532, 537 (1984). Regardless of how the question is labeled, when a determination by LIRC calls for a value judgment, the appellate court must decide in each type of case the extent to which it should substitute its own evaluation for that of the agency. When the expertise of the agency is significant to the value judgment, the agency's decision, although not controlling, should be given great weight. *Id.* at 383–84, 355 N.W.2d at 537. Because we conclude that LIRC has neither expertise nor a body of precedent on this question, this court need not defer to LIRC's conclusion that Sitter's claim was not fairly debatable. The record, however, supports LIRC's conclusion that Sitter's claim was not "fairly debatable."

The term "fairly debatable" has been interpreted in insurance bad faith cases. The leading case in the area of bad faith on the part of an insurer is *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978). Under *Anderson,* there must be some reasonable basis, whether it concerns a question of fact or a question of law, which would lead a reasonable insurer to conclude that it need not make payment on the claim; that is, there is something which makes the claim fairly debatable. *Id.* at 691–92, 271 N.W.2d at 376–77. According to *Anderson,* the lack of a reasonable basis to deny a claim may be inferred from the insurer's or employer's conduct and imputed to an

insurer or employer where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to the facts or to proof submitted by the insured. *See id.* at 693, 271 N.W.2d at 377.

The court in *Anderson* sets out the criteria for a bad faith claim: "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691, 271 N.W.2d at 376. We adopt those criteria for bad faith and apply them to sec. 102.18(1)(bp), Stats., and Wis. Adm. Code § Ind 80.70(2).

As we read sec. 102.18(1)(bp), Stats., the issue of bad faith is reached only after a final award has been made to the claimant. A hearing examiner then examines the record to determine if there was any credible evidence which would demonstrate that the claim was fairly debatable. If the examiner finds that there is no credible evidence which the employer or insurer could rely upon to conclude that the claim was fairly debatable, the examiner then determines if the employer's or insurer's actions in denying payment were reasonable. This test is an objective one from the standpoint of the employer or insurer: Would a reasonable employer or insurer under like or similar circumstances have denied or delayed payment on the claim.

When deciding whether the employer's actions were reasonable, it is necessary to determine if the claim was properly investigated and if the results of the investigation were subject to a reasonable evaluation and review. *Anderson,* 85 Wis. 2d at 692, 271 N.W.2d at 377. The examiner must base the decision

on the information or data that the employer or insurer had in its possession at the time the claim for benefits was denied and how that information was used.

The question of whether there is any credible evidence which demonstrates that the claim is fairly debatable is a mixed question of fact and law. An appellate court must separate the factual findings from the conclusions of law and apply the appropriate standard of review to each. *Badger State Agri-Credit & Realty, Inc. v. Lubahn,* 122 Wis. 2d 718, 723, 365 N.W.2d 616, 619 (Ct. App. 1985). It is the function of LIRC to determine the credibility of evidence or witnesses and to weigh the evidence. Sec. 102.23(6), Stats.; *Farmers Mill of Athens, Inc. v. DILHR,* 97 Wis. 2d 576, 580, 294 N.W.2d 39, 41 (Ct. App. 1980). The findings of an administrative agency are entitled to deference upon review. *See Boynton Cab Co. v. DILHR,* 96 Wis. 2d 396, 407, 291 N.W.2d 850, 855 (1980). We will give deference to an examiner's evaluation of the disputed evidence, including credibility, as well as his findings of fact upon review. *See id.*

The application of a particular set of facts to a legal standard is a question of law to which a reviewing court owes no deference. *See Nottelson,* 94 Wis. 2d at 115–16, 287 N.W.2d at 768. However, when a legal conclusion is so intertwined with the factual findings supporting that conclusion, the appellate court should give some weight to the fact finder's decision. *See Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). The question of whether the claim is "fairly debatable," given the facts found by the examiner, presents a question of law; however, this court will give some weight to the hearing

examiner's decision. The question of reasonableness is also a question of law and is one where this court will give some weight to the examiner's decision.

In examining LIRC's findings, this court's role is to review the record for credible and substantial evidence which supports LIRC's determination, rather than to weigh opposing evidence. *Graebel Moving & Storage v. LIRC*, 131 Wis. 2d 353, 356, 389 N.W.2d 37, 39 (Ct. App. 1986). The hearing examiner found that Kimberly-Clark had acted in bad faith by unreasonably denying Sitter his benefits. There is ample evidence in the record to support the finding.

Sitter's claim was filed on March 26, 1984. Only two weeks later, Kimberly-Clark denied the claim. At the time of the denial, Kimberly-Clark had the results of audiograms performed on Sitter over an extended period of time. These tests showed a progressive loss of hearing.

Sitter was evaluated by two physicians a month after the denial. Both physicians, one being Kimberly-Clark's own expert, attributed the hearing loss to noise exposure, but Kimberly-Clark continued to deny benefits. At the hearing, Kimberly-Clark did not produce any evidence that would indicate that Sitter's hearing loss was attributable to something other than Sitter's exposure to noise at Kimberly-Clark. Kimberly-Clark's health and safety director, James McDonnell, testified at the hearing, indicating that he had seen Dr. Gromer's report in the late spring of 1984 and was aware of Sitter's claim when the noise levels were measured throughout the mill in July 1984. McDonnell also testified that the survey of the noise levels was prompted by complaints of current workers and also by hearing loss claims filed, such as Sitter's.

Kimberly-Clark made no effort to show the results of the noise survey to Dr. Gromer or any other physician nor to inquire whether the noise levels could have caused the hearing loss.[3]

Kimberly-Clark relies heavily upon the noise survey taken in the second warehouse after Sitter retired. At the hearing, McDonnell stated that, in his opinion, the noise levels had not decreased from the time the second warehouse began being used in 1981, but he had no tests or records of tests other than those taken after Sitter's retirement. The examiner concluded that these tests were only marginally relevant. There is sufficient credible evidence to support this conclusion.

The trial court considered the noise level test an appropriate method to challenge the factual basis upon which the two physicians based their opinions.

---

[3]It appears to be Kimberly-Clark's position that because the noise exposure level in the second warehouse was less than 90 decibels per eight-hour day, the level of noise was not sufficient to cause a hearing loss and implies that, as a matter of law, the noise level would not be sufficient to cause Sitter's hearing loss. Wisconsin Adm. Code § Ind 80.25(1) discusses harmful noise:

> (1) HARMFUL NOISE. Hearing loss resulting from hazardous noise exposure depends upon several factors, namely, the over-all intensity (sound pressure level), the daily exposure, the frequency characteristic of the noise spectrum and the total lifetime exposure. Noise exposure level of 90 decibels or more as measured on the A scale of a sound level meter for 8 hours a day is considered to be harmful.

This code section creates a presumption that noise exposure in excess of 90 decibels per eight-hour day can cause hearing loss. This section is also clear that hearing loss can result from exposure to less than 90 decibels, as is demonstrated by Sitter's claim.

Even if one accepts the trial court's view as correct, Kimberly-Clark did nothing to determine if that data would change the opinions of the doctors. They had no medical evidence that the noise exposure would not be significant in causing the hearing loss nor did they have any expert testimony as to the effect of this noise exposure. On this record, there is absolutely no evidence upon which Kimberly-Clark could say that Sitter's claim is fairly debatable.[4]

Whether a claim is "fairly debatable" implicates the question of whether the facts necessary to evaluate the claim are properly investigated and developed or recklessly ignored and disregarded. *Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376. The record indicates that Kimberly-Clark unreasonably denied Sitter's claim by failing to properly investigate the claim, failing to subject the proof submitted by Sitter to a reasonable evaluation and by acting in reckless indifference to the facts of this case. The record supports the examiner's conclusion that Kimberly-Clark's actions constituted bad faith.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[4]We do not, therefore, reach the issue of whether the examiner was correct in saying a claim becomes fairly debatable when one medical opinion is countered by another medical opinion.