NORTH AMERICAN MECHANICAL, INC., Plaintiff-Respondent-Cross Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant-Cross Respondent,

Craig A. HALVERSON, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 89-1677. Submitted on briefs March 6, 1990.—Decided August 30, 1990.*

(Also reported in 460 N.W.2d 835.)

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Robert A. Kay* of Madison.

For the defendant-co-appellant-cross respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Lowell E. Nass,* assistant attorney general.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Jeffrey W. Younger* and *Paul W. Schwarzenbart* of *Lee, Kilkelly, Paulson & Kabaker, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Craig Halverson and the Labor and Industry Review Commission (LIRC) appeal and North American Mechanical, Inc. (North American) cross appeals a judgment of the circuit court remanding the case to LIRC with instructions. The issue is what showing a worker's compensation claimant must make in order to prove "bad faith" on the part of an insurer or employer for an unreasonable delay in payment of benefits under sec. 102.18(1)(bp), Stats.[1] We conclude a claimant must satisfy the two-part test established in *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). Because LIRC did not articulate whether Halverson has done so, we affirm.

Craig Halverson sustained a compensable work injury to his left elbow and, as a result, was temporarily totally disabled from August 29, 1985 to October 22, 1985. Halverson was discharged by North American on December 27, 1985. He filed an application for a hearing requesting compensation under sec. 102.35(3), Stats.[2]

---

[1]Section 102.18(1)(bp), Stats., provides:

> The department may include a penalty in an award to an employe if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith. The department may award an amount which it considers just, not to exceed the lesser of 200% of total compensation due or $15,000. The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

[2]Section 102.35(3), Stats., provides in part:

> Any employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment, where suitable employment is available within the employe's physical and mental limitations, upon order of the department and in addition to other

On June 12, 1986, the hearing examiner found that North American had violated sec. 102.35(3), Stats., and ordered North American to make lump sum payments to Halverson, his attorney, and the Unemployment Compensation Reserve Fund. Because Halverson was potentially eligible for up to one year's lost wages, the order was interlocutory. Payment was due within ten days.

On October 10, 1986, LIRC affirmed the hearing examiner. North American appealed to the circuit court. However, on June 30, 1987, North American filed a stipulation for voluntary dismissal. The interlocutory order then became effective and payment to Halverson was due.

On August 4, 1987, the Department of Industry, Labor and Human Relations (DILHR) sent a letter to North American requesting the dates the payments had been made to Halverson so that the interest due could be calculated. The payroll clerk at North American testified that when she received the letter, she did not understand it and showed it to her supervisor, Karen Fleming. Fleming told her to send it to North American's Insurance company. The insurance company sent the letter back to North American. Fleming testified that she was unaware of Halverson's action and did not know what to do with the letter.

On September 24, 1987, DILHR sent North American a second letter, requesting the same information. On that same date, Halverson's attorney sent a letter to the hearing examiner requesting bad faith and late payment penalties due to North American's failure to pay, initiating this action. On September 28, 1987, North American's counsel sent John Hoffman, an attorney who was both secretary-treasurer and counsel for North Ameri-

benefits, has exclusive liability to pay to the employe the wages lost during the period of such refusal, not exceeding one year's wages.

804

can, a letter urging him to make the payment.[3] Hoffman was on vacation, however, and did not return until October 5, 1987. The checks were mailed October 6, 1987.

Hoffman testified that he was solely responsible for the dismissal of the appeal and that he knew then that payments were due. He testified that he did not immediately authorize payments because he was told by North American's counsel that he should hold off on paying the amount due until they "received notification of what the correct calculations were as far as the interest and everything else to that date."

A hearing was held to determine whether late and bad faith penalties were appropriate under secs. 102.22(1)[4] and 102.18(1)(bp), Stats. The hearing examiner dismissed the application. On review, LIRC reversed the hearing examiner's order and imposed both late and bad faith penalties.

North American appealed to the circuit court. The circuit court set aside the award under sec. 102.18(1)(bp), Stats., and remanded it to LIRC, concluding that LIRC had improperly applied the standard articulated by this court in *Kimberly-Clark Corp. v. LIRC,* 138 Wis. 2d 58, 405 N.W.2d 684 (Ct. App. 1987).[5]

---

[3]North American was represented at the hearing by Hoffman. On appeal to LIRC, North American retained separate counsel.

[4]Section 102.22(1), Stats., provides, in part, that "[w]here the employer or his or her insurer is guilty of inexcusable delay in making payments, the payments as to which the delay is found shall be increased by 10%."

[5]The circuit court remanded only "the portion of the LIRC award finding bad faith and imposing a 200 percent penalty under sec. 102.18(1)(bp)," Stats. The imposition by LIRC of a ten percent penalty for inexcusable delay under sec. 102.22(1), Stats., was implicitly upheld. This penalty is not challenged on appeal.

*See Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978).

## STANDARD OF REVIEW

The facts in this case are undisputed. Whether undisputed facts fulfill the standard of sec. 102.18(1)(bp), Stats., presents an issue of law. *See Bertram v. Kilian,* 133 Wis. 2d 202, 205, 394 N.W.2d 773, 774 (Ct. App. 1986). We independently determine an issue of law without deference to the decision of the circuit court. *Id.* In addition, legal conclusions of the LIRC are not binding upon us and are the subject of review. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115, 287 N.W.2d 763, 767 (1980).

Halverson argues that this court should not substitute its judgment for LIRC's application of a statute to found facts where a rational basis exists for LIRC's application and interpretation. The supreme court, however, recently rejected use of the "rational basis" standard "*unless* the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts." *Drivers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 83, 452 N.W.2d 368, 371–72 (1990) (citations omitted) (emphasis added). Although LIRC has promulgated a rule, Wis. Adm. Code sec. Ind 80.70, pertinent to the interpretation of this statute, the present issue is one of first impression. *See Drivers Local No. 695,* 154 Wis. 2d at 83–84, 452 N.W.2d at 372. The appropriate weight to be afforded LIRC's interpretation is "no weight at all." *Id.* at 84, 452 N.W.2d at 372.

Section 102.18(1)(bp), Stats., provides, in part, that the "department may include a penalty in an award to an employe if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith."

Pursuant to the power conferred by the last clause of sec. 102.18(1)(bp), Stats., LIRC promulgated Wis. Adm. Code sec. Ind 80.70(2), defining malice and bad faith:

> An insurance company or self-insured employer who, without credible evidence which demonstrates that the claim for the payments is fairly debatable, unreasonably fails to make payments of compensation or reasonable and necessary medical expenses, or after having commenced those payments, unreasonably suspends or terminates them, shall be deemed to have acted with malice or in bad faith.

Whether payment is "fairly debatable" has been interpreted in both insurance and worker's compensation "bad faith" cases. *See Anderson,* 85 Wis. 2d at 690–93, 271 N.W.2d at 376–77; *Kimberly-Clark,* 138 Wis. 2d at 65–66, 405 N.W.2d at 687–88. In *Anderson,* the court concluded that an insured may assert a cause of action in tort against an insurer for bad faith refusal to honor a claim. *Id.* at 690, 271 N.W.2d at 376. The court said that, in order to show a claim for bad faith, a plaintiff must show "the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691, 271 N.W.2d

at 376[6] (emphasis added).

In *Kimberly-Clark,* the court applied the *Anderson* test to the determination of whether a claim was "fairly debatable" under sec. 102.18(1)(bp), Stats., and Wis. Adm. Code sec. Ind 80.70(2). *Kimberly-Clark,* 138 Wis. 2d at 65, 405 N.W.2d at 688. The test is an objective one: would a reasonable employer or insurer under like circumstances have denied or delayed payment on the claim. *Id; Anderson,* 85 Wis. 2d at 692, 271 N.W.2d at 377.

The issue is whether the *Anderson* test is also applicable to the determination of whether a delay in payment resulted from bad faith. *See* sec. 102.18(1)(bp), Stats., and Wis. Adm. Code sec. Ind 80.70(2). We conclude that it is and that in order to show bad faith a claimant must make a showing that the employer acted with: (1) a lack of a reasonable basis for the delay which occurred and (2) knowledge or a reckless disregard of the lack of a reasonable basis for the delay.

The cardinal rule in all statutory interpretation is to discern the intent of the legislature. *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 226, 453 N.W.2d 856, 867 (1990). Chapter 102 contemplates three types of conduct stemming from a delay in payments: (1) excusa-

---

[6]The court in *Anderson* explained that:

> While we have stated . . . that, for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard of a reasonable basis for a denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured. *Id.* at 693, 271 N.W.2d at 377 (emphasis in original).

ble delay; (2) inexcusable delay, though not in bad faith; and (3) bad faith delay.

Section 102.22(1), Stats., provides that "[w]here the employer or his or her insurer is guilty of *inexcusable delay* in making payments, the payments as to which the delay is found shall be increased by 10%." (Emphasis added.) The fact that only "inexcusable" delay is subject to the 10% penalty indicates that the legislature contemplated that some delay could be excusable. *See Coleman v. American Universal Ins. Co.,* 86 Wis. 2d 615, 625–26, 273 N.W.2d 220, 224 (1979).

The potential 200% penalty of sec. 102.18(1)(bp), Stats., is reserved only for cases where the employer or insurer acted in "bad faith." Thus, the legislature contemplated that there could be a delay in payment that, while inexcusable, did not rise to the level of "bad faith." We conclude that a finding of the "knowledge" element of the *Anderson* test is a prerequisite to imposition of "bad faith" penalties under sec. 102.18(1)(bp), Stats.

## THE LIRC DECISION

Whether a delay in payment resulted from bad faith is a mixed question of law and fact. When mixed questions are presented, the court must determine two matters: "(1) what happened; and (2) whether those facts fulfill a particular legal standard." *State v. Gollon,* 115 Wis. 2d 592, 600, 340 N.W.2d 912, 916 (Ct. App. 1983).

LIRC should determine first if there was a reasonable basis for delay. *See Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376. If LIRC concludes there was *not* a reasonable basis for the delay, it should next determine whether the employer had knowledge of the lack of a reasonable basis for delaying payments or if there was a reckless disregard of the lack of a reasonable basis. *See*

*id.* If LIRC determines from the record, after finding no reasonable basis for the delay, that the "knowledge" element is satisfied, it may then conclude that the employer's delay of payments was in bad faith.

In concluding that North American had delayed payment in bad faith, in violation of sec. 102.18(1)(bp), Stats., LIRC stated that:

> Mr. Hoffman was aware of Judge Benkert's order, and he knew that payment was due from the employer rather than the insurance company . . .. Even assuming that Mr. Hoffman misunderstood his attorney's advice, it was unreasonable for him to have ignored the matter of payment for over three months, when he knew immediate payment of substantial sums were due to the applicant and his attorney.

However, LIRC gave no indication whether Hoffman had knowledge of the lack of a reasonable basis for the delay. The circuit court observed that:

> In this case, LIRC concluded that North American was guilty of bad faith in delay because, regardless of how Hoffman understood his attorney's advice, it was unreasonable for him to have ignored the matter for over three months when he knew payments were due on a claim that was not fairly debatable. The legal standard LIRC applied is not the proper legal standard to apply *unless* it is clear that the standard used included a requisite finding that the employer had knowledge of a lack of a reasonable basis for delay.
>
> It is not clear that the proper analysis was followed by LIRC, especially with regard to the issue of whether the employer knew there was no reasonable basis to delay payments. LIRC found that Hoffman

810

a) knew that payment was due from North American; b) was the only person who could authorize payments; c) withdrew the appeal on June 30, 1987; and d) was unreasonable in ignoring the matter of payments for approximately three months regardless of how he had understood his attorney's advice. However, this is not the same as determining that 1) there was no reasonable basis for the delay which occurred and 2) Hoffman had knowledge of a lack of a reasonable basis for that delay through direct evidence of that fact, or by finding him to have had a reckless disregard of a lack of a reasonable basis for delay or reckless indifference to facts. (Emphasis in original.)

We agree with the circuit court. A finding with respect to the "knowledge" element is crucial to reach the conclusion that the delay was in bad faith. "Bad faith," by definition, cannot be unintentional. *Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376. It is "the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated." *Id.* at 692, 271 N.W.2d at 377.

Where LIRC does not articulate the basis for its conclusions, we will not assume the correct legal standard was applied. *See Village of Random Lake v. LIRC,* 141 Wis. 2d 559, 567, 415 N.W.2d 577, 581 (Ct. App. 1987) ("LIRC's error lies not in having applied the wrong legal standard but in having failed to identify what standard it did apply."). Under sec. 102.23(1)(e)1, Stats., a court is authorized to set aside a judgment where LIRC acted "in excess of its powers." *Zschock v. Indus. Comm'n.,* 11 Wis. 2d 231, 235, 105 N.W.2d 374, 376 (1960). We agree with the circuit court that, by not making an explicit finding regarding the "knowledge"

element of the *Anderson* test, LIRC acted in excess of its powers in violation of sec. 102.23(1)(e)1.

On cross-appeal, North American raises for the first time the argument that the legislature did not intend sec. 102.18(1)(bp), Stats., to apply to sec. 102.35(3), Stats., which imposes liability for unreasonable refusal to rehire. Issues raised for the first time on appeal will not generally be considered. *Schmitz v. Grudzinski,* 141 Wis. 2d 867, 876, 416 N.W.2d 639, 643 (Ct. App. 1987). We see no reason to depart from this rule.

We therefore affirm the circuit court's setting aside of LIRC's judgment with respect to the "bad faith" finding and accompanying 200% penalty and remanding of the case to LIRC with instructions to apply the correct legal standard.[7]

*By the Court.*—Judgment affirmed.

[7]North American also argues that LIRC abused its discretion by providing no reasons for imposing the maximum 200% penalty. In light of the disposition of this case, we need not reach this issue.