Kelly BROWN, Plaintiff-Appellant, †

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent,

SCHULTZ SAV-O-RACINE and Reliance Insurance Company, Defendants-Respondents-Petitioners.

Supreme Court

*No. 02–1429. Oral argument October 7, 2003.—*
*Decided November 18, 2003.*

2003 WI 142

(Also reported in 671 N.W.2d 279.)

† Motion for Reconsideration denied 2-26-04.

For the defendants-respondents-petitioners there were briefs by *Michael C. Frohman* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Michael C. Frohman.*

For the plaintiff-appellant there was a brief by *John A. Becker* and *Becker, French & DeMatthew,* Racine, and oral argument by *John A. Becker.*

For the defendant-respondent there was a brief (in the court of appeals) by *Lowell E. Nass,* assistant attorney general, and *James E. Doyle,* attorney general.

37

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals.[1] The circuit court affirmed the order of the Labor and Industry Review Commission (LIRC), which held that Reliance Insurance Company, the insurer, did not act in bad faith when it suspended temporary total disability benefit payments to Kelly Brown, the employee, prior to the termination of his healing period. *See* Wis. Stat. § 102.18(1)(bp) (2001–2002)[2] (establishing penalty in an award for bad faith); Wis. Admin. Code § DWD 80.70(2) (Nov. 2002) (defining bad faith).

¶ 2. The court of appeals reversed the order of the circuit court, concluding that LIRC misapplied the law of bad faith to the facts of the case. The court of appeals concluded that the insurer failed to properly investigate and develop the facts necessary to evaluate the employee's claim and, as a result, the insurer acted in bad faith when it terminated the employee's benefits.[3] The court of appeals remanded the cause to the circuit court for remand to LIRC for a determination of the amount of the penalty award.

¶ 3. The issue before us is whether LIRC's conclusions of law—that the employee's claim for benefits was fairly debatable and that the insurer's suspension of benefits did not constitute bad faith under Wis. Stat. § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.70(2) —should be affirmed.

---

[1] *Brown v. LIRC,* 2003 WI App 56, 260 Wis. 2d 788, 659 N.W.2d 918.

[2] All references to the Wisconsin statutes are to the 2001–02 version unless otherwise indicated.

[3] *Brown,* 260 Wis. 2d 788, ¶ 1.

¶ 4. We conclude that this court must give great weight deference to LIRC's conclusions of law and that LIRC's conclusions of law are reasonable. Accordingly, we affirm LIRC's order dismissing the employee's application for bad faith and reverse the decision of the court of appeals.

I

¶ 5. For the purposes of this review, we provide an abbreviated version of the undisputed facts that are relevant to deciding the issues presented. Additional facts appear later in the opinion relating specifically to the issue of bad faith.

¶ 6. The employee worked as a meat cutter at a grocery store and suffered a compensable back injury in March 1993. The employee re-injured his back in April 1995. After the second injury, the employee could not return to work. The insurer initially paid the employee temporary total disability from April 6, 1995 through January 26, 1996, but it suspended payment after investigating allegations that the employee was working and not reporting offset income earned from an external source.

¶ 7. The employee challenged the termination of his benefits and requested a worker's compensation hearing on the issue. In November 1996, a hearing was held before an administrative law judge and benefits were reinstated for the remainder of the employee's healing period because the insurer failed to prove that the employee received any income that would have offset disability payments received during the stipulated disability period. Thus the employee won his case for continuation of benefits, and the insurer lost. The issue of whether the employee should receive benefits is

not before us. The issue before us is whether the employee is entitled to additional penalty payments on the ground that the insurer acted in bad faith.

¶ 8. After winning his claim for continuation of benefits, the employee filed a claim for a penalty award pursuant to Wis. Stat. § 102.18(1)(bp), alleging that the insurer acted in bad faith when it terminated his temporary total disability benefits. After a hearing in March 2001, the administrative law judge concluded that although there may have been better ways to go about suspending the employee's benefits in January 1996, the insurer's actions did not constitute bad faith. The employee appealed the administrative law judge's findings and order to LIRC. LIRC affirmed and adopted as its own, with one modification, the findings and order of the administrative law judge.

¶ 9. The employee then appealed to the circuit court. The circuit court concluded that the insurer had a reasonable basis to suspend the employee's benefits because the merits of the suspension were debatable.

II

¶ 10. Our analysis in this case centers around the standard of review. The court of appeals correctly explained that a determination of bad faith under Wis. Stat. § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.70(2) presents a mixed question of fact and law.[4] The parties' conduct presents a question of fact.[5] Courts will

[4] *Nottelson v. DILHR*, 94 Wis. 2d 106, 115, 287 N.W.2d 763 (1980).

[5] *Nottelson,* 94 Wis. 2d at 114–15; *Applied Plastics, Inc. v. LIRC,* 121 Wis. 2d 271, 276, 359 N.W.2d 168 (Ct. App. 1984).

sustain LIRC's factual determinations so long as they are supported by credible and substantial evidence.[6]

¶ 11. The interpretation of a statute presents a question of law.[7] The application of a statutory standard to a fact situation is ordinarily a question of law for the courts.[8] The conclusion that an insurer's con-

---

[6] Wisconsin Stat. § 102.23(6) provides as follows:

> If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

This court set forth the standard of review for LIRC's orders as follows:

> Factual findings of LIRC are conclusive as long as they are supported by credible and substantial evidence and LIRC did not act fraudulently or in a manner which exceeds its powers. A court may overturn a decision made by LIRC if it was fraudulently obtained or made while LIRC was acting outside the scope of its powers. A LIRC order or award may also be set aside if it is unsupported by LIRC's findings of fact, or depends upon "any material and controverted finding of fact that is not supported by credible and substantial evidence." However, "the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact."

*Wis. Elec. Power Co. v. LIRC,* 226 Wis. 2d 778, 786, 595 N.W.2d 23 (1999) (citations omitted).

[7] *Nottelson,* 94 Wis. 2d at 114–15; *Applied Plastics,* 121 Wis. 2d at 276.

[8] *Nottelson,* 94 Wis. 2d at 115; *Applied Plastics,* 121 Wis. 2d at 276.

duct constitutes bad faith is drawn from the underlying findings of fact, and we label it a legal conclusion.[9]

¶ 12. Nevertheless, labeling an issue as a question of law does not mean that a court may disregard an agency's determination. As the court of appeals correctly stated, an important principle of administrative law is that, in recognition of the expertise and experience of an agency, a court will in certain circumstances defer to the agency's interpretation and application of a statute. Whether a court independently interprets a statute or independently applies the law to the facts or defers in some way to an agency's conclusions of law depends on the particular agency action being reviewed.

¶ 13. Over time, we have developed a three-level approach to an agency's conclusions of law: a court gives an agency's conclusion of law no deference (the court makes a de novo determination of the question of law); a court gives an agency's conclusion of law due weight deference; or a court gives an agency's conclusion of law great weight deference.[10] The appropriate level of scrutiny a court should use in reviewing an agency's decision on questions of law depends on the comparative institutional capabilities and qualifications of the court and the agency to make a legal determination on a particular issue.[11]

---

[9] *Nottelson,* 94 Wis. 2d at 114–15.

[10] *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996); *see also Jicha v. DILHR,* 169 Wis. 2d 284, 290, 485 N.W.2d 256 (1992).

[11] *State ex rel. Parker v. Sullivan,* 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994) (quoted with approval in *UFE Inc.,* 201 Wis. 2d at 284).

¶ 14. No deference is due an agency's conclusion of law when an issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance.[12] When no deference is given to an administrative agency, a court engages in its own independent determination of the questions of law presented, benefiting from the analyses of the agency and the courts that have reviewed the agency action.

¶ 15. Due weight deference is appropriate when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute.[13] Under the due weight deference standard "a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable."[14]

¶ 16. Great weight deference is appropriate when: (1) an agency is charged with administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute.[15] In other words, when a legal question calls for value and policy judgments that require the expertise and experience of

---

[12] *UFE Inc.,* 201 Wis. 2d at 285.

[13] *Id.* at 286.

[14] *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660 n.4, 539 N.W.2d 98 (1995).

[15] *Id.* at 660; *Lisney v. LIRC,* 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992).

an agency, the agency's decision, although not controlling, is given great weight deference.[16]

¶ 17. We agree with the court of appeals that LIRC's conclusions of law in the present case, although not controlling, are entitled to great weight deference. The legislature delegated the responsibility to administer the Wisconsin's Worker's Compensation Act to the Department of Workforce Development (DWD) and to LIRC.[17] The legislature's rationale was that LIRC would develop the specialized knowledge, expertise, and

---

[16] *Harnischfeger Corp.,* 196 Wis. 2d at 659; *Nottelson,* 94 Wis. 2d at 117; *Kimberly-Clark Corp. v. LIRC,* 138 Wis. 2d 58, 64, 405 N.W.2d 684 (Ct. App. 1987).

[17] *See* Wis. Stat. §§ 102.14(1) (delegating enforcement of Chapter 102 to the DWD), 102.18(3) (providing that a party in interest may petition LIRC to review the decision of an examiner). *See also Hagen v. LIRC,* 210 Wis. 2d 12, 19, 563 N.W.2d 454 (1997) ("[T]he Department of Workforce Development (DWD) is charged under Wis. Stat. § 102.14(1) with administering Chapter 102, and both the DWD and LIRC are charged with interpreting the statute and making factual findings when determining a claimant's entitlement to worker's compensation benefits."). Courts have frequently held that LIRC's decisions about chapter 102 are entitled to great deference. *See, e.g., Hagen,* 210 Wis. 2d at 24–25 (LIRC's interpretation of § 102.52(1) is entitled to great weight deference); *United Wis. Ins. Co. v. LIRC,* 229 Wis. 2d 416, 600 N.W.2d 186 (Ct. App. 1999) (the court will defer to LIRC's interpretation if it is intertwined with value and policy determinations inherent in the agency's decision-making function); *Doering v. LIRC,* 187 Wis. 2d 472, 523 N.W.2d 142 (Ct. App. 1994) (the court gives great deference to LIRC's application and interpretation of a labor statute).

experience to make consistent policy judgments about bad faith claims when it heard disability compensation claims.

¶ 18. LIRC has developed extensive experience interpreting penalty provisions contained in the Worker's Compensation Act.[18] The legislature enacted Wis. Stat. § 102.18(1)(bp) in 1981 and authorized DWD to adopt a rule governing bad faith. LIRC adopted such a rule through the rulemaking process. Moreover, LIRC has many years of experience applying the law of bad faith and determining appropriate penalties for bad faith consistent with the statutes, administrative code, and case law.[19] In sum, through the DWD's rulemaking

---

[18] *Beverly Enters., Inc. v. LIRC,* 2002 WI App 23, ¶ 20, 250 Wis. 2d 246, 640 N.W.2d 518 (LIRC's determination of bad faith is entitled to great weight deference; LIRC has had a substantial number of cases to develop considerable experience).

[19] The court of appeals in *Kimberly Clark,* 138 Wis. 2d at 64, concluded that LIRC did not have the expertise or body of precedent necessary to address the interplay of Wis. Stat. § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.70(2) at the time that case was decided. *See also N. Am. Mech. v. LIRC,* 157 Wis. 2d 801, 806, 460 N.W.2d 835 (Ct. App. 1990).

Nevertheless, we conclude, as did the court of appeals in the present case, that since these cases, LIRC has had ample time to develop the requisite expertise and precedent necessary to address this question. *See, e.g., Greenwood v. Woodbridge Corp.,* No. 1999046119 (September 10, 2002) (available at http://www .dwd.state.wi.us/lirc/wcdecsns/686.htm) (finding no bad faith on part of insurer suspending benefits); *Baysinger v. Ludwig Siding,* No. 1996031413 (June 30, 1998) (available at http: //www.dwd.state.wi.us/lirc/wcdecsns/231.htm) (finding bad faith on part of insurer suspending benefits); *Smith v. Longview Fibre Co.,* No. 1990024253 (October 29, 1998) (available at http: //www.dwd.state.wi.us/lirc/wcdecsns/259.htm) (same); *Starkl v. JC Penney Milwaukee Catalog,* No. 90065879 (June 13, 1996)

process and through LIRC's cases, LIRC has developed specialized experience, expertise, and knowledge concerning bad faith and employed its expertise in the present case, and deferring to LIRC's interpretation and application of the statute provides uniformity and consistency. We therefore conclude, as did the court of appeals, that LIRC applied that experience, expertise, and knowledge in the present case, and that LIRC's legal conclusions are entitled to great weight deference.[20]

¶ 19. When an agency's conclusions of law are entitled to great weight deference, a court will refrain from substituting its view of the law for that of an agency charged with administration of the law and will sustain the agency's conclusions of law if they are reasonable.[21] Thus a court should sustain an agency's conclusion of law even if an alternative view of the law

(same) (available at http://www.dwd.state.wi.us/lirc/wcdecsns /7%2D20%5Fsta.htm); *Meyer v. Milliken Millwork Inc.,* No. 93023332 (February 27, 1998) (available at http://www.dwd.state .wi.us/lirc/wcdecsns/195.htm) (same). *See also* LIRC cases cited in *Beverly Enters.,* 250 Wis. 2d 246, ¶ 20 n.9. A search on LIRC's Web page for worker's compensation decisions indicates that there are a total of 43 catalogued decisions by the LIRC interpreting the phrase "bad faith."

[20] *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 13–14, 357 N.W.2d 534 (1984).

[21] *Harnischfeger Corp.,* 196 Wis. 2d at 661; *Lisney,* 171 Wis. 2d at 506; *see also Honthaners Rests., Inc. v. LIRC,* 2000 WI App 271, ¶ 13, 240 Wis. 2d 234, 621 N.W.2d 660; *Eaton Corp. v. LIRC,* 122 Wis. 2d 704, 708, 364 N.W.2d 172, 174 (Ct. App. 1985).

is just as reasonable or even more reasonable.[22] An agency's conclusion of law is unreasonable and may be reversed by a reviewing court if it directly contravenes the words of the statute or the federal or state constitution, if it is clearly contrary to the legislative intent, history, or purpose of the statute, or if it is without rational basis.[23]

¶ 20. We turn now to examining LIRC's interpretation of the bad faith statute and its application of bad faith law to the facts of the present case.

## III

¶ 21. Wisconsin Stat. § 102.18(1)(bp) provides, in relevant part, that the Department of Workforce Development (DWD) may include a penalty in an award to an employee if the department determines that an employer's or insurance carrier's suspension or termination of payments resulted from bad faith. The statute authorizes the department to award an amount that it considers just, not to exceed the lesser of 200% of the total compensation due or $15,000. The statute further authorizes the DWD to define, by rule, actions which demonstrate bad faith.[24]

---

[22] *UFE Inc.*, 201 Wis. 2d at 287; *Harnischfeger Corp.*, 196 Wis. 2d at 660.

[23] *Harnischfeger Corp.*, 196 Wis. 2d at 662; *Barron Elec. Coop. v. Pub. Serv. Comm'n*, 212 Wis. 2d 752, 766, 569 N.W.2d 726 (Ct. App. 1997).

[24] Wisconsin Stat. § 102.18(1)(bp) provides as follows:

FINDINGS, ORDERS AND AWARDS. The department may include a penalty in an award to an employee if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy

¶ 22. The DWD adopted such a rule. Wisconsin Admin. Code § DWD 80.70(2) defines actions constituting bad faith. An insurance company that, after having commenced payments under § DWD 80.70(2), unreasonably suspends or terminates the payments without credible evidence demonstrating that the claim for the payments is fairly debatable shall be deemed to have acted in bad faith.[25]

¶ 23. The court of appeals concluded in *Kimberly-Clark*[26] that *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978), recognizing the tort of bad faith, applies to bad faith claims under Wis. Stat. § 102.18(1)(bp) and the accompanying administrative

---

against an employer or insurance carrier for malice or bad faith. The department may award an amount which it considers just, not to exceed the lesser of 200% of total compensation due or $15,000. The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

[25] Wisconsin Admin. Code § DWD 80.70(2) provides as follows:

MALICE OR BAD FAITH: An insurance company or self-insured employer who, without credible evidence which demonstrates that the claim for the payments is fairly debatable, unreasonably fails to make payment of compensation or reasonable and necessary medical expenses, or after having commenced those payments, unreasonably suspends or terminates them, shall be deemed to have acted with malice or in bad faith.

This chapter of the administrative code was renumbered from § IND to § DWD 80 as of July 1996.

[26] *Kimberly-Clark,* 138 Wis. 2d at 65.

code provision, Wis. Admin. Code § DWD 80.70(2).[27] The *Anderson* case adopted a two-part test for bad faith. To demonstrate bad faith, a claimant must show that the insurer had no reasonable basis for denying benefits and knew or recklessly disregarded that there was no reasonable basis for denying benefits.

■■■

¶ 24. The claimant, here the employee, must first show that the insurance company did not have a reasonable basis to suspend payment on the claim. In other words, the insurer did not possess information that would lead a reasonable insurer to conclude that an employee's claim is fairly debatable and that there-fore payment need not be made on the claim.[28] The "fairly debatable" test is an objective test. It asks whether a reasonable insurer under similar circum-stances would have denied, suspended, or delayed pay-ment on the claim.[29]

■■■

¶ 25. The test for determining that an insurer has a reasonable basis to suspend payment on the claim is whether the insurer properly investigated the claim and whether the results of the investigation were

---

[27] *Coleman v. American Universal Insurance Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979), held that the exclusive remedy provision within the worker's compensation law does not bar a tort action for bad faith claims. The legislature enacted Wis. Stat. § 102.18(1)(bp) in response to *Coleman. See* § 14, ch. 92, Laws of 1981; *Kimberly-Clark*, 138 Wis. 2d at 62–63.

[28] *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 692, 271 N.W.2d 368 (1978); *Kimberly-Clark*, 138 Wis. 2d at 64. *See also Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 2003 WI 46, ¶ 33, 261 Wis. 2d 333, 661 N.W.2d 789.

[29] *Anderson*, 85 Wis. 2d at 692; *Kimberly-Clark*, 138 Wis. 2d at 65.

subject to a reasonable evaluation and review.[30] The reasonable or unreasonable character of the insurer's conduct is gauged by examining the circumstances existing when the insurer made its decision to deny benefits.[31]

¶ 26. The second element the claimant must show to demonstrate bad faith is that the insurer knew or recklessly disregarded that there was no reasonable basis for denying benefits. The *Anderson* court explained that the nature of the tort of bad faith is intentional and that implicit in the two-part test is "our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs, submitted by the insured."[32] The focus for determining whether an insurer is liable for bad faith is the sufficiency or strength of its reasoning.

¶ 27. The state of mind required for a bad faith penalty may be better understood upon examination of Wis. Stat. § 102.22(1), which imposes a penalty for inexcusable neglect. As the court of appeals explained in *North American Mechanical v. LIRC*, 157 Wis. 2d 801, 808–809, 460 N.W.2d 835 (Ct. App. 1990), chapter 102 contemplates three types of conduct resulting in a delay in payments: (1) excusable neglect; (2) inexcusable neglect; and (3) bad faith delay. The legislature apparently contemplated that some delay could be

---

[30] *Kimberly-Clark*, 138 Wis. 2d at 65. *See also Trinity*, 261 Wis. 2d 333, ¶ 33.

[31] *Kimberly-Clark*, 138 Wis. 2d at 65–66.

[32] *Anderson*, 85 Wis. 2d at 693. *See also Trinity*, 261 Wis. 2d 333, ¶ 38.

excusable. When the delay is inexcusable, the delayed payments shall be increased by 10% under § 102.22(1).

¶ 28. The potential 200% penalty provided in Wis. Stat. § 102.18(1)(bp) is reserved for cases of bad faith. Not all inexcusable delays rise to the level of bad faith. "[A] finding of the 'knowledge' element of the *Anderson* test is a prerequisite to imposition of 'bad faith' penalties under sec. 102.18(1)(bp), Stats."[33]

¶ 29. If an insurance company exercises ordinary care in investigating the facts and law and reasonably concludes that the claim is fairly debatable, the company's actions will not constitute bad faith.[34]

¶ 30. We now turn to whether LIRC's conclusions of law that the employee's claim for benefits was fairly debatable and that the insurer's suspension of benefits did not constitute bad faith within Wis. Stat. § 102.18(1)(bp) and Wis. Admin. Code § DWD 80.70(2) were reasonable and should be affirmed.

## IV

¶ 31. The sole question before us is whether LIRC's conclusion of law that the insurer did not act in bad faith is a reasonable interpretation and application

---

[33] *N. Am. Mech.,* 157 Wis. 2d at 808–09.

[34] *Anderson,* 85 Wis. 2d at 693. *See* John W. Thornton & Milton S. Blaut, *Bad Faith and Insurers: Compensatory and Punitive Damages,* 12 Forum 699, 719 (1977) ("An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant.").

51

of Wis. Stat. § 102.18(1)(bp), the administrative code, and the case law. We reiterate that the issue we address is not whether the employee was entitled to temporary total disability benefits. That issue has already been decided in the employee's favor; the employee's benefits were reinstated.

¶ 32. LIRC reviewed the evidence submitted to the administrative law judge and adopted the findings of fact (with one exception),[35] the conclusions of law, and the order of the administrative law judge as its own. LIRC concluded that the employer had a reasonable basis for believing the employee was engaged in wage-earning services.

¶ 33. The administrative law judge addressed the various pieces of information received at the hearing and concluded that the employer had not suspended benefits in bad faith. The administrative law judge considered important the fact that the insurer received information from three independent sources indicating that the employee was working in insurance sales.

¶ 34. The insurer's first source of information was the state. The Wisconsin Worker's Compensation Division received an anonymous tip on its fraud hotline that the employee was defrauding the insurer by failing to report external income. The insurer initiated an investigation to verify the veracity of the anonymous tip.

---

[35] LIRC removed an incorrect finding of fact of the administrative law judge. The administrative law judge found that "[t]hey determined the applicant had a business phone number and appeared to be selling insurance while he was supposed to be temporarily totally disabled." LIRC replaced this finding with the following: "The report noted that the applicant had been an independent insurance agent since October 1994 selling products for a number of companies. The applicant had an agent license number with the state."

¶ 35. The insurer's second source of information was the employee's supervisor. The insurer communicated with the employee's supervisor, who reported that the employee was selling insurance and was not planning to return to his former occupation.

¶ 36. The third source of information was an investigation firm. The insurer hired the firm to watch the employee. The firm provided surveillance on the employee on four separate occasions. The surveillance showed the employee wearing a business suit while entering a building during working hours. The administrative law judge concluded that this information "could be interpreted as selling insurance." The evidence disclosed that the employee had been licensed to sell insurance in Wisconsin since 1994. The evidence also disclosed that the employee did not have a business telephone number.

¶ 37. Apparently the administrative law judge allowed the insurer to infer that when someone was working he was probably earning money. The assumption that the employee·was earning money was reinforced by the fact that the employee was in his third year of insurance sales.

¶ 38. The insurer waited until after it had acquired this information—three months after the initial contact with the fraud investigation unit—before suspending benefit payments. The insurer did not, however, seek wage or earnings information from the employee until after it suspended benefits. The court of appeals criticized the insurer and LIRC for this failure, remarking that an insurer cannot shoot first and ask questions later.

¶ 39. The administrative law judge noted that the legislature placed a fraud provision in the worker's compensation act to prevent fraud on the system and

stated that "if fraud is involved, and the temporary disability money is paid under mistake of fact, there is no way of getting it back from the person who committed the fraud." Thus, reasoned the administrative law judge, employers, insurers, and LIRC have an important interest in suspending benefits before the costs of the fraud become too great. The administrative law judge thus considered the purposes of the law in reaching his decision. The employee contends that the administrative law judge did not adequately consider another purpose of the worker's compensation law, namely to assure payments to an injured employee. Here the employee had no other source of income and suffered undue hardship to the point of foreclosure and bankruptcy.

¶ 40. From the totality of this information, the administrative law judge concluded that "although there may have been better ways to go about suspending benefits in January 1996," the evidence was sufficient to conclude that the actions of the insurer did not constitute bad faith.

¶ 41. The employee objects to the validity of the individual pieces of pre-suspension evidence on the grounds that each is either weak, based on third-hand hearsay, or, in the case of his insurance license, a perfectly legitimate second job pursuant to Wis. Stat. § 102.43(c)(b).

¶ 42. The insurer cannot seriously debate the employee's criticisms. The claims adjuster admitted at the hearing that there was not much in the video tape surveillance or in the surveillance report.

¶ 43. Weak evidence notwithstanding, both parties make strong arguments. The employee argues that the insurer did not exercise sufficient diligence in its investigation, while the insurer queries what more it

could reasonably have done under the circumstances of this case. The insurer contends that the court of appeals unreasonably placed a requirement on the insurer to obtain actual evidence of business profits before suspending benefits in the face of evidence of income-producing work activity. According to the insurer, this requirement is particularly onerous because insurers do not have authority to require production of documents disclosing such information prior to an evidentiary hearing. The employee recognizes that an insurer does not have the right to compel production of documents before a hearing, but argues that an insurer does have the right (and obligation) to request information. Because an employee might not tell the truth does not, asserts the employee, excuse an insurer from asking for earnings information.

¶ 44. This case presented a close call for the administrative law judge and LIRC. Were this court reviewing the order of LIRC de novo, the result might very well be different.

¶ 45. But we are not reviewing the order of LIRC de novo. Ultimately, we must reverse the decision of the court of appeals because, after enunciating the great weight deference standard as the appropriate standard of review applicable in this case, the court of appeals failed, we conclude, to pay credence to it.

¶ 46. The court of appeals concluded that the insurer's limited investigation did not provide it with any information that could have possibly led it to conclude that it need not make payment on the employee's claim.[36] The court of appeals' decision can be read to create a new requirement of insurers that does not exist in the statute or administrative code, namely

---

[36] *Brown v. LIRC,* 260 Wis. 2d 788, ¶ 17.

that an insurer must either communicate with an employee directly to obtain wage and earnings information or must obtain such information elsewhere before it can suspend benefits.

¶ 47. LIRC has not adopted, as far as we can discover, the court of appeals' criterion for gauging whether an investigation or development of the facts is reasonable. In the present case LIRC explicitly concluded that the insurer "does not have to have exact income information in order to make an exact offset before it can withhold payment of TTD [temporary total disability]. The question is whether the [insurer] had a reasonable basis for believing the [employee] was engaged in wage earnings services. The commission finds after reviewing the record that the [insurer] did have a reasonable basis for such a belief." LIRC apparently interprets the statute and administrative code on a case-by-case basis in order to determine whether a claim is fairly debatable under the statute, administrative code, and case law.

¶ 48. The court of appeals acknowledges in its decision that an agency's interpretation and application of a statute and administrative code are reasonable if they accord with the language of the statute, the legislative intent, the legislative history, the federal or state constitution, and the purpose of the statute, and "are consistent with the judicial analysis of the statute."[37] The court of appeals did not assert that LIRC's case-by-case interpretation and application of the statute and administrative code, or its order in the present case, violated the language of the statute, the legislative intent, the legislative history, or the federal or state constitution.

---

[37] *Id.*, ¶ 19.

¶ 49. The court of appeals concluded that LIRC's interpretation and application of the statute and administrative code "are inconsistent with [the court of appeals'] own interpretation and application of the term 'fairly debatable' as set forth in *Kimberly-Clark* and directly contravene the basic purpose behind the Worker's Compensation Act [which is to give prompt relief to injured employees entitled to compensation]."[38]

¶ 50. We disagree with the court of appeals. LIRC did apply the term "fairly debatable" as set forth in *Kimberly-Clark* and *Anderson* and did consider the purposes behind the Worker's Compensation Act. The court of appeals and LIRC just disagree about the weight to be given to the evidence presented and to the purposes of the Act.

¶ 51. We cannot say that, had we been in its position, we would have reached the same conclusions as LIRC. We can say, however, that LIRC's conclusions are reasonable, although different conclusions might be more reasonable. We acknowledge that the investigation came up with some—but not a great deal of— evidence, and it is arguable that the insurer may have been premature in suspending benefits when it did. Inherent in the great weight deference standard is the concept that LIRC is well positioned to make judgments about bad faith so it may develop and apply consistent policies and standards. Courts are bound to give LIRC flexibility to do so. We therefore conclude that LIRC's

---

[38] *Id.,* ¶¶ 18–19.

The court of appeals also held that the insurer knew it had no information upon which to suspend payment of benefits, the second prong of the bad faith test laid out in *Anderson,* 85 Wis. 2d at 691. *See Brown,* 260 Wis. 2d 788, ¶ 17.

conclusions of law and order were reasonable and that the court of appeals did not show proper deference to LIRC.

¶ 52. That said, insurers, employers, and LIRC should not infer from this opinion that suspending an employee's benefits after a brief, inconclusive investigation is an acceptable means of avoiding a bad faith penalty. The court recognizes that employees are often financially dependent upon worker's compensation benefits and a reasonable investigation under the circumstances is needed before suspension of benefits occurs. The insurer's actions in the present case may have been reasonable in LIRC's opinion, but the insurer's actions press very near the limit of what the great weight deference level of review will bear.

¶ 53. For the reasons set forth, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.