ESTATE OF Leon P. SZLESZINSKI, by its Special
Administrator and Darlene Szleszinski,
Petitioners-Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION and
Midwest Coast Transport,˙
Respondents-Respondents,†

TRANSHIELD TRUCKING and
Transhield Leasing Company, Respondents.

Court of Appeals

*No. 2004AP3033. Submitted on briefs May 23, 2005.
—Decided September 27, 2005.*

2005 WI App 229

(Also reported in 706 N.W.2d 345.)

† Petition to review filed.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Matthew A. Biegert* and *Anne E. Schmiege* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the respondent-respondent, Midwest Coast Transport, the cause was submitted on the brief of *Janice A. Rhodes* of *Kravit, Hovel, Krawczyk & Leverson, S.C.* of Milwaukee.

On behalf of the respondent-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *David C. Rice*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the respondent, Transhield Leasing Company, the cause was submitted on the brief of *James B. Sherman* of *Wessels & Pautsch, P.C.* of Minneapolis, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The Estate of Leon Szleszinski[1] appeals a judgment of the circuit court affirming the Labor and Industry Review Commission. LIRC reversed a determination by an administrative law judge that Midwest Coast Transport (Midwest) had wrongfully discriminated against Szleszinski when it terminated his employment due to his disability. Szleszinski contends there is no factual or legal basis for LIRC's determination that Midwest had a valid safety defense to his allegations of discrimination. We agree with Szleszinski and reverse the judgment in part, thereby reinstating the ALJ's decision, and we remand for a calculation of Szleszinski's attorney fees and costs.

## Background

¶ 2. Szleszinski was hired as a commercial truck driver by Transhield Leasing Company and was to start on June 21, 1995. Transhield leases its trucks and drivers to Midwest exclusively. Transhield pays the drivers, but Midwest can approve or reject drivers. Midwest also oversees driver safety, including drivers' federally required Department of Transportation certification. Szleszinski has held his commercial driver's license since the early 1990s and has never had it suspended or revoked. He always passed his physicals,

---

[1] Szleszinski initiated this action but after his death, his estate was substituted. We will refer simply to Szleszinski throughout the opinion.

and his federal certification was valid through at least December 1998.

¶ 3. When Szleszinski was seventeen, he was diagnosed with Wilson's disease, a disorder that causes copper retention. Wilson's can manifest as neurological problems, liver disease, or other symptoms. Szleszinski's diagnosing physician, however, called it a "very mild" case and Szleszinski managed his disease with medication.

¶ 4. Prior to starting with Transhield and Midwest, Szleszinski had a physical examination performed by Dr. L. D. Carlson, who cleared Szleszinski to drive under the applicable federal regulations. Midwest knew Szleszinski had Wilson's when it initially accepted him as a driver. Accordingly, it consulted with a physician's assistant at Central Plains Clinic, an affiliate of Occupational Health Associates of South Dakota (OHA). Midwest typically relied on OHA for medical certification of its drivers. The physician's assistant concluded Szleszinski met the Department of Transportation standards, and Szleszinski began driving for Midwest.

¶ 5. In March 1996, Midwest received two complaints of erratic driving against Szleszinski. Szleszinski did not remember either incident. While the general practice for a driving report was to confer with the employee about safe driving habits, Midwest requested Szleszinski be medically re-evaluated. Carlson examined Szleszinski again and recommended he see a neurologist. Midwest made arrangements through OHA for Szleszinski to see Dr. Ali Choucair, a neuro-oncologist. Choucair noted that Szleszinski had some neurological impairment and suggested further testing, including a road test, but ultimately concluded: "His deficit I do not believe is such that will prevent him from operating a motor vehicle."

¶ 6. Midwest then sent Szleszinski's medical records, including Choucair's report, to Dr. Dana Windhorst at OHA. Windhorst reported:

> I have reviewed Mr. Szleszinski's records, specifically the note from Ali Choucair, M.D. . . . .
>
> The neurological examination did indicate some mild neurological deficits, specifically in the area of coordination . . . .
>
> In addition, there is the history, apparently twice, of this driver being observed to swerve on the highway suggesting some problem with functional coordination during his driving.
>
> Wilson's disease is a progressive neurological disease, and this is of grave concern, given the responsibilities of driving large commercial vehicles on the highways. The Department of Transportation Conference on Neurological Disorders and Commercial drivers, dated July 1988, *recommends, without exception,* disqualification for individuals with confirmed diagnosis of Wilson's disease. Putting all this together, I cannot make a recommendation for this individual to be medically certified for DOT licensure. It is also my opinion that, *regardless of the results of psychometric testing* and MRI, that I would not change this recommendation. (Emphasis added.)

¶ 7. Based on Windhorst's report, Midwest informed Szleszinski on March 26, 1996, that it no longer considered him qualified to drive for Midwest, effectively ending his employment. Following his disqualification, Szleszinski privately saw a neurologist and a radiologist. The neurologist reported no impact on his ability to drive, finding he fell within the Department of Transportation safety guidelines, and the radiologist reported a normal MRI. There is also no indication that

Szleszinski ever lost his federal certification and he continued to work as a driver until his death in 1999.

¶ 8. In 1996, and as amended in 1998, Szleszinski commenced an action against Midwest and Transhield under the Wisconsin Fair Employment Act (WFEA), WIS. STAT. § 111.31–111.395, alleging discrimination because of a disability.[2] *See* WIS. STAT. § 111.34. Midwest and Transhield argued he failed to exhaust administrative remedies under federal regulations and moved for summary judgment. The ALJ denied the motion on procedural grounds and ultimately ruled in Szleszinski's favor. The ALJ awarded back pay with interest, costs, and attorney fees. The ALJ also held that Midwest, not Transhield, was the employer for WFEA purposes.

¶ 9. Midwest appealed to LIRC, arguing that while Szleszinski had made a prima facie case for unlawful discrimination, it had a valid safety defense under the WFEA. LIRC agreed that Szleszinski's disability was reasonably related to his ability to work safely, and reversed on what it considered to be "a different interpretation of the relevant law." However, LIRC agreed with the ALJ that Midwest was Szleszinski's employer under the WFEA.

¶ 10. Szleszinski petitioned the circuit court for review. The court held that LIRC's determination was supported by credible evidence. Szleszinski appeals.

### Discussion

¶ 11. The scope of our review of an administrative agency decision under WIS. STAT. § 227.57 is the same as the trial court's, and we review the agency's decision,

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

not the trial court's. *Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998).

¶ 12. "The complainant in a handicap discrimination case must show that: (1) he or she is handicapped within the meaning of the WFEA, and that (2) the employer took one of the enumerated actions on the basis of handicap." *Id.* at 9 (footnotes omitted). If the complainant makes the requisite showing, the burden shifts to the employer to provide a valid defense under WIS. STAT. § 111.34. *Target Stores*, 217 Wis. 2d at 9.

¶ 13. In this case, the underlying facts are undisputed. It is also undisputed that Szleszinski made the required initial showing. Szleszinski argues LIRC erred when it concluded Midwest had a viable defense under WFEA. This involves application of a statute to a set of facts, ordinarily a question of law that we review de novo. *See Brown v. LIRC*, 2003 WI 142, ¶ 11, 267 Wis. 2d 31, 671 N.W.2d 279. However, when we review an administrative agency decision, simply labeling an issue a question of law does not mean we may automatically disregard the agency's determination. *See id.*, ¶ 12.

¶ 14. Whether we independently apply the law to the facts or defer in some way to the agency depends on the particular action on review. *Id.* We have a three-tier approach to an agency's interpretations of law: we give no deference, due weight deference, or great weight deference to an agency depending on the comparative institutional capabilities and qualifications of the court and the agency. *Id.*, ¶ 13.

¶ 15. We have previously held LIRC should be entitled to great weight deference in the application of

various aspects the WFEA. *See Hutchinson Tech., Inc. v. LIRC*, 2004 WI 90, ¶ 10 n.6, 273 Wis. 2d 394, 682 N.W.2d 343 (whether an individual is disabled); *Target Stores*, 217 Wis. 2d at 13 (whether reasonable accommodations were made). The same factors used to support great weight deference in those cases would equally apply to LIRC's determination whether an employer has a valid defense under Wis. Stat. § 111.34. However, even under the great weight standard, the agency's determinations are not controlling. *Target Stores*, 217 Wis. 2d at 16–17.

¶ 16. Before we turn to LIRC's decision regarding Midwest's defense, however, there are two threshold issues. The first is whether Szleszinski had to exhaust his remedies under federal rules. For this determination, we owe LIRC no deference, as LIRC is not charged with administering these provisions of federal law. It therefore is in no better position than we are to make this determination. The second issue is whether Midwest is properly considered an employer under the WFEA, and LIRC's determination on that matter is entitled to great weight deference. We address these issues first because if we conclude Szleszinski was required to exhaust his remedies under the federal rules or the WFEA does not apply because Midwest is not an employer, our analysis would end.

### Exhaustion of Remedies

¶ 17. LIRC ruled that Szleszinski "was not required to helplessly accept Dr. Windhorst's refusal to medically certify him. Federal regulations provide an appeal mechanism through which disputed the DOT

medical certifications can be reviewed." That "mechanism" is found in 49 C.F.R. § 391.47.[3] We are unconvinced that this section applies in this case.

■

¶ 18. In the first place, the WFEA does not require individuals to exhaust other administrative remedies. The legislature has, when it deemed exhaustion appropriate, expressly required utilizations of administrative remedies prior to initiating circuit court action. *See, e.g.,* WIS. STAT. §§ 49.498(19)(a), 50.03(11)(a), and 801.02(7)(b).

¶ 19. More substantively, however, 49 C.F.R. § 391.47(b)(2) states: "The applicant must submit proof that there is a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualification." Here, the disagreement is between two reports for the carrier. When Carlson recommended Szleszinski see a neurologist, Midwest elected Choucair, who essentially certified Szleszinski even while recommending additional testing.[4]

¶ 20. Midwest did not subject Szleszinski to additional testing because Windhorst had subsequently concluded that "regardless of the results of any tests, and based upon the July 1988 report . . . a person with Wilson's disease should be disqualified from driving." Thus, Windhorst's report disqualified Szleszinski even after Choucair had cleared him.

---

[3] All references to the Code of Federal Regulations are to the 2005 version.

[4] To the extent Midwest claims Choucair concluded Szleszinski had "serious" neurological deficits, the record citation it provides does not support such a conclusion.

¶ 21. It is disingenuous for Midwest to create a disagreement by seeking a second physician's report after the first report was favorable to the driver and then arguing the federal remedy should be exhausted. The dispute is between two physicians for the employer. We do not read the federal regulation to require Szleszinski to employ the federal dispute resolution procedure when the dispute is between two physicians for the same party.[5] Because of this, and because the WFEA does not explicitly require exhaustion of administrative remedies, Szleszinski was not required to utilize the federal dispute resolution procedure prior to initiating his WFEA action.

### Whether Midwest is an
### Employer under the WFEA

▅▅

¶ 22. Under the WFEA, "no employer, labor organization, employment agency, licensing agency or other person may engage in any act of employment discrimination . . . ." WIS. STAT. § 111.321. LIRC ruled that Midwest was an employer under the WFEA. Midwest contends this is unsupported by facts of record, it is neither an employer nor an "other person," and the WFEA therefore does not apply to it. If we agreed with Midwest, this would be an alternate basis for affirming LIRC's decision. However, we conclude regardless of whether Midwest could be considered an employer, it is at least an "other person."

---

[5] Neither LIRC nor Midwest addresses this argument as raised by Szleszinski. Thus, even if we did not believe the argument had merit, arguments not refuted are generally deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶ 23. Based on its reading of *Flowers v. South Cent. Wis. Joint Apprenticeship & Training Comm.* (LIRC, 06/21/85), Midwest asserts that "other person" "is not intended as a catch-all to ensnare any other entity not specifically enumerated in the statute," including incorporated legal entities such as itself. Midwest's reliance on *Flowers* is misplaced.[6]

¶ 24. South Central was an advisory body for the State Division of Apprenticeship and Training (the division). South Central "monitors the progress of apprentices and makes recommendations to [the division] on the completion of apprenticeship indentures or for cancellation of such indentures." Flowers filed his claim against South Central after his "apprenticeship indenture" was terminated. The ALJ ruled he had been terminated for cause, not racial discrimination as Flowers alleged.

¶ 25. LIRC, however, went another direction and ruled that the WFEA did not apply to South Central because it was not an employer, a licensing agency, or an "other person." There was no real dispute over its status as an employer—it was not one—but Flowers had argued it was a licensing agency. LIRC rejected that idea, ruling that a "licensing agency" necessarily refers to a unit or bureau of the government. South Central was a non-governmental group. Moreover, LIRC determined, it was ultimately the division that controlled Flowers' apprenticeship, not South Central, even

---

[6] We are particularly appreciative of the State Law Library, which retrieved copies of the LIRC decisions for us. Midwest was not required to provide these decisions, but as they are less readily accessible than regular case and statutory law, it would have been prudent of Midwest, which relies on the decisions so heavily, to provide them to us.

though the division took recommendations from South Central.

¶ 26. Turning to whether South Central was an "other person," LIRC ruled it was not:

> [WIS. STAT. § 990.01(26)] defines person to include " . . . all partnerships, associations and bodies politic or corporate." [South Central is none of these.]
>
> Moreover, the Commission considers that in this statute the term "person" is used in its individual sense, as a contrast to the agencies, organizations and business entities listed immediately before "person." Otherwise, individuals would not be prohibited from discriminating. The Commission believes the Legislature did not intend to exclude individuals from this prohibition.

Midwest focuses on the latter paragraph to imply that "other person" necessarily refers to a human being.

¶ 27. However, in *Johnson v. Central Reg'l Dental Testing Serv.* (LIRC, 02/29/96), a case involving a dentistry examination service and its relationship to licensing in Wisconsin, LIRC clarified and limited *Flowers*.[7] LIRC explained:

> Notwithstanding the general suggestion . . . that the "person" language might reach non-employer entities that affect employment opportunities, the *Flowers* decision is a narrow and specific declaration that this

---

[7] *Johnson* involved a complaint against Central Regional Dental Testing Service and the State Department of Regulation and Licensing. Johnson alleged that the test administered by the Service worked to prevent minorities from becoming licensed in dentistry. LIRC relied on *Flowers* and rejected the Service as a respondent because it was an independent testing agency that provided test results for multiple states and the states ultimately set their own criteria for analyzing and applying the results into a licensing scheme.

789

possibility does not exist in the specific case of non-governmental organizations which make the determinations affecting decisions of governmental licensing organizations.

. . . .

The Commission's decision need not and should not be extended beyond this specific kind of situation.

¶ 28. Midwest is not a non-governmental organization that makes determinations affecting decisions of government licensing organizations. *Flowers* is inapplicable here.

¶ 29. Rather, "the commission has consistently construed the coverage of the [W]FEA broadly, holding that a 'person' other than an employer, labor organization or licensing agency can violate the Act if it engages in discriminatory conduct which has a sufficient nexus with the denial or restriction of some individual's employment opportunity." *Johnson* (LIRC, 02/29/96). This is consistent with the supreme court's explanation that "the WFEA is a 'remedial statute . . . [and] should be broadly interpreted to resolve the problem it was designed to address.'" *Crystal Lake Cheese Factory v. LIRC*, 2003 WI 106, ¶ 46, 264 Wis. 2d 200, 664 N.W.2d 651 (quoting *McMullen v. LIRC*, 148 Wis. 2d 270, 275, 434 N.W.2d 830 (Ct. App. 1988)).

¶ 30. Midwest's actions have "a sufficient nexus with the denial or restriction of" Szleszinski's employment opportunities. Employees of Transhield drove only for Midwest, and Midwest had the power to reject drivers. Therefore, if Midwest disqualified a driver, despite the fact that Transhield otherwise approved of the driver, the driver could not work because there was no other company for which to haul. Thus, Midwest's qualification decisions are directly related to a Tran-

shield driver's employment opportunities. But even if Midwest is not an employer, we would hold that it is at the very least an "other person" under the WFEA. Any interpretation of the WFEA that would exclude Midwest from its application would allow Midwest to do indirectly what Transhield—who Midwest argues is the real employer—cannot do directly, and "ignores the purpose of the act and its intended liberal construction." *See Johnson* (LIRC, 02/29/96).

## Whether Midwest has a Valid Safety Defense

¶ 31. Under the WFEA, it is not discrimination if an employer takes an action, such as refusal to hire or termination of employment, when the nature of the disability is "reasonably related to the individual's ability to adequately undertake the job-related responsibilities of that individual's employment, membership or licensure." Wis. Stat. § 111.34(2)(a). Moreover, in the case of common carriers, the profession's "special duty of care may be considered in evaluating whether the employee or applicant can adequately undertake the job-related responsibilities of a particular job . . . ." Wis. Stat. § 111.34(2)(c). However, "this evaluation shall be made on an individual case-by-case basis and may not be made by a general rule which prohibits the employment or licensure of individuals with disabilities in general or a particular class of individuals with disabilities." *Id.*

¶ 32. Federal regulations allow only physically qualified individuals to drive commercially. 49 C.F.R. § 391.41(a). A driver is qualified if he "[h]as no mental, nervous, organic, or functional disease . . . likely to interfere with his . . . ability to drive a commercial motor vehicle safely[.]" 49 C.F.R. § 391.41(b)(9).

791

¶ 33. To receive federal approval as an interstate carrier, 49 C.F.R. § 391.43(a), states drivers' physicals "shall be performed by a licensed medical examiner . . . ." The results of the exam are then to be recorded on an exam form like the one included in the Code. 49 C.F.R. § 391.43(f). Both subsections, read together, imply drivers will have actual, face-to-face contact with the doctor or other examiner. Thus, it appears that under the operative Code language, a paper review of the driver's medical history is insufficient.

¶ 34. Midwest and LIRC suggest that Windhorst's report reveals Szleszinski could not drive safely. We disagree and, moreover, we conclude Windhorst's "opinion" is an insufficient report as a matter of law under the Code, which requires actual examination of the patient. Windhorst's opinion was merely a conduit for application of a Department of Transportation conference report that never became a regulation.

¶ 35. Windhorst's report is also insufficient under the WFEA because the act requires a case-by-case assessment of each individual. Windhorst did not make an individualized determination about Szleszinski's ability to drive, but recommended disqualification simply the because the Department of Transportation report said that all Wilson's patients should be disqualified. While Midwest claims this constituted an individualized assessment because Windhorst reviewed Szleszinski's individual records, Windhorst stated that test results would be irrelevant to his determination whether to disqualify Szleszinski. In other words, Windhorst had no plans to rely on an individualized

assessment of Szleszinski's abilities when the Wilson's diagnosis was, in Windhorst's mind, determinative of the outcome.

¶ 36. Indeed, LIRC concedes Windhorst did not perform an individual assessment of Szleszinski but it argues that its decision should stand because federal safety regulations prevail over lesser state standards. We reiterate, however, that the federal regulations require a physical examination—something Windhorst did not provide. His report therefore cannot be considered a valid basis for a determination of Szleszinski's fitness to drive. The only doctor who conducted a physical exam on Midwest's behalf after the erroneous driving reports declined to disqualify Szleszinski absent further testing.

¶ 37. Moreover, the federal regulations do indeed list some diseases and conditions that will, in fact, result in blanket disqualification, such as diabetes mellitus, 49 C.F.R. § 391.41(b)(3), and myocardial infarction. 49 C.F.R. § 391.41(b)(4). We might be more inclined to accept LIRC's federal supremacy argument if a listed disease or condition were involved. Wilson's disease, however, does not result in automatic disqualification of a driver under the Code.

¶ 38. Because Windhorst's evaluation is invalid as a matter of law, it should not have been considered by Midwest in its qualification determination or by LIRC at the hearing. Thus, there is no credible evidence to support the determination that Szleszinski was unfit to drive because both Choucair and Carlson, plus at least one private physician, thought he was qualified. Indeed, despite all the discussion of the impact of Wilson's disease on the body, no one provided any evidence that

Wilson's was the reason Szleszinski was swerving on two occasions—which is what prompted Midwest's action in the first place.

¶ 39. To the extent that the ALJ, LIRC, and trial court decisions dismissed Transhield Trucking and/or Transhield Leasing Company from the case, we do not reach those determinations, because Szleszinski never challenged those parties' dismissal. In all other respects, the judgment is reversed. Additionally, the ALJ had awarded costs and attorney fees to Szleszinski. Accordingly, we remand for a determination of: (1) Szleszinski's attorney fees and costs through the date of the ALJ's decision; (2) whether Szleszinski is entitled to fees and costs for proceedings following the ALJ's decision; and (3) if Szleszinski is entitled to fees and costs for proceedings beyond the ALJ's decision, what the reasonable amount is.

*By the Court.*—Judgment reversed in part and cause remanded with directions.