MICHAEL J. GABLEMAN, J. (concurring).
¶159 I agree that we should no longer give deference to administrative agency conclusions of law and that the services provided by Stuyvesant Dredging constitute "processing" under Wis. Stat. § 77.52(2). However, unlike the lead opinion, I would apply the doctrine of *605 constitutional avoidance and eliminate deference by withdrawing the language in Harnischfeger Corp. v. LIRC, 196 Wis.2d 650, 539 N.W.2d 98 (1995), that indicated deference is mandatory. Specifically, I would withdraw the following two sentences: (1) "courts should defer to an administrative agency's interpretation of a statute in certain situations," id. at 660, 539 N.W.2d 98 ; and (2) "[o]nce it is determined under Lisney that great weight deference is appropriate, we have repeatedly held that an agency's interpretation must then merely be reasonable for it to be sustained," id. at 661, 539 N.W.2d 98.[1] I would withdraw this language because the Harnischfeger court's use of the word "should" in the first sentence did not expose the mandatory nature of deference, which does not appear until the second sentence with its use of the word "must." In so doing, I would thereby avoid addressing the issue on constitutional grounds.[2]
¶160 Constitutional avoidance is a subset of the axiom that "[a]n appellate court should decide cases on the narrowest possible grounds." State v. Castillo, 213 Wis.2d 488, 492, 570 N.W.2d 44 (1997). "Consistent with this rule is the recognition that a court will not reach constitutional issues where the resolution of other issues disposes of an appeal." Id. In the present case, we need not determine whether our constitution prohibits deference because deference is nothing more than a judicial construct based on our misreading of Wis. Stat. § 227.57(10). See lead op., ¶¶ 27-32.
*606 ¶161 As the lead opinion aptly explains, the deference doctrine is a beast of our creation-neither the legislature nor executive purported to require that we apply deference. See lead op., ¶¶ 18-33. Therefore, we are free to dispense with deference as simply as we adopted it. See Holytz v. Milwaukee, 17 Wis.2d 26, 37, 115 N.W.2d 618 (1962), superseded by statute, Wis. Stat. § 893.80.
¶162 We created deference through a continued misreading of Wis. Stat. § 227.57(10), which culminated in our holding in Harnischfeger, 196 Wis.2d at 661, 539 N.W.2d 98, that deference is required, not merely an aid in statutory interpretation. See lead op., ¶¶ 27-33. We can (and therefore should) remedy this misreading without invoking the constitution. Johnson Controls, Inc. v. Emplrs. Ins., 2003 WI 108, ¶ 99, 264 Wis.2d 60, 665 N.W.2d 257 ; see also lead op., ¶¶ 82-83.
*75 ¶163 The lead opinion briefly states the five traditional factors we use when deciding whether to overrule one of our prior decisions, lead op., ¶ 82, and then just as briefly concludes that our prior decisions regarding deference must be overruled based solely on their unconstitutional holdings, id., ¶ 83. Our authority to withdraw language from our prior decisions alone is sufficient to the task and the lead opinion's invocation of the constitution in this context is an unnecessary and imprudent addition to its substantive analysis.
I. THE TRADITIONAL FIVE CIRCUMSTANCES FOR OVERTURNING PRECEDENT
¶164 We are "more likely to overturn a prior decision when one or more of the following circumstances is present":
(1) Changes or developments in the law have undermined the rationale behind a decision;
*607 (2) There is a need to make a decision correspond to newly ascertained facts;
(3) There is a showing that the precedent has become detrimental to coherence and consistency in the law;
(4) The prior decision is "unsound in principle;" or
(5) The prior decision is "unworkable in practice."
Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶ 33, 293 Wis.2d 38, 717 N.W.2d 216 (quoting Johnson Controls, 264 Wis.2d 60, ¶¶ 98-99, 665 N.W.2d 257 ). I discuss these five "circumstances" in order of how strongly they apply to deference.
A. The Prior Decision is "Unsound in Principle"
¶165 The fourth circumstance is especially present with regard to deference and strongly supports our decision to eliminate it. Deference is simply unsound in principle. In theory, deference should make courts' decision-making easier and more efficient. See The Honorable Patience Drake Roggensack, Elected to Decide: Is the Decision-Avoidance Doctrine of Great Weight Deference Appropriate in This Court of Last Resort?, 89 Marq. L. Rev. 541, 544 (2006). In practice, however, deference does not save significant court resources. Because the level of deference afforded is often outcome-determinative, id. at 559, parties and courts often expend just as much effort arguing and deciding the proper level of deference as they would the merits, see, e.g., Emmpak Foods, Inc. v. LIRC, 2007 WI App 164, ¶¶ 3-8, 303 Wis.2d 771, 737 N.W.2d 60. Thus, deference often hinders rather than helps meaningful judicial review while providing no corresponding benefit. See generally *608 Brown v. LIRC, 2003 WI 142, ¶¶ 10-19, 267 Wis.2d 31, 671 N.W.2d 279 ("Our analysis in this case centers around the standard of review.").
¶166 Importantly, deference (especially great weight deference), if correctly and honestly applied, leads to the perverse outcome of courts often affirming inferior interpretations of statutes. See, e.g., id., ¶ 44 ("Were this court reviewing the order of LIRC de novo, the result might very well be different."). In our role as court of last resort, we should ensure that erroneous-but-reasonable legal conclusions are corrected. See Hilton v. DNR, 2006 WI 84, ¶ 54, 293 Wis.2d 1, 717 N.W.2d 166 (Prosser, J., concurring). Any doctrine that allows erroneous legal conclusions to survive unscathed is unsound in principle.
B. The Need to Make a Decision Correspond to Newly Ascertained Facts
¶167 The second circumstance also applies in this case, though to a lesser extent. Deference is based on the theory that administrative agencies develop expertise in *76 their realm. Barron Elec. Coop. v. PSC, 212 Wis.2d 752, 759, 569 N.W.2d 726 (Ct. App. 1997) ("[A]n ... important principle of administrative law is that, in recognition of the expertise and experience possessed by agencies, courts will defer to their interpretation of statutes in certain situations."); see also DOR v. Menasha Corp., 2008 WI 88, ¶¶ 48-50, 311 Wis.2d 579, 754 N.W.2d 95. However, we do not scrutinize whether agency decision-makers actually possess any expertise. For example, some agency decisions are made by a single hearing examiner-of unknown expertise or experience. Roggensack, supra ¶ 7, at 557. Further, under the erstwhile deference construct, it is possible for multi-member agency review *609 boards to lack substantial experience or expertise. Id. at 558 (questioning whether LIRC commissioners who served, on average, 3.7 years each between 1979 and 2004 possessed more expertise in interpreting statutes than courts). We may say that it is only a matter of speculation that agency decision-makers possess less expertise than courts when it comes to interpreting various statutes. Importantly, it is equally a matter of speculation that they possess more. Such is not the kind of foundation upon which sound judicial doctrines are built.
C. The Other Circumstances
¶168 The first, third, and fifth circumstances do not substantially apply in this case. Though, for purposes of the first circumstance, we may be able to infer that the legislature disapproves of deference based on its enactment of Wis. Stat. § 227.57(11), such an inference is too weak to support overruling decades of prior decisions. As to the third circumstance, deference is intended to maintain consistency in the law, though it is a matter of reasonable debate as to whether it achieves that goal. Hilton, 293 Wis.2d 1, ¶¶ 64-65, 717 N.W.2d 166 (Prosser, J., concurring). Finally, despite its many flaws, deference is certainly workable in practice for purposes of the fifth circumstance.
II. CONCLUSION
¶169 Clearly, "one or more of the [listed] circumstances is present" such that we can and should end our practice of deferring to administrative agency conclusions of law without invoking the constitution. Bartholomew, 293 Wis.2d 38, ¶ 33, 717 N.W.2d 216. I would, therefore, follow the law and apply the doctrine of constitutional *610 avoidance in order to decide this case on the narrowest possible grounds. For the foregoing reasons, I respectfully concur.
¶170 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

I refer to Justice Kelly's opinion as a "majority/lead" opinion to assist litigants and courts in understanding its precedential value. Justice Kelly's opinion is a majority opinion with regard to the statutory analysis of the term "processing" presented in Section II.B of the majority/lead opinion and the conclusions presented in Section III. See State v. Elam, 195 Wis.2d 683, 685, 538 N.W.2d 249 (1995) (explaining that "a majority of the participating judges must have agreed on a particular point for it to be considered the opinion of the court."). As set forth in footnote 4 of the majority/lead opinion, it also constitutes a majority in:
• Section I, setting forth the facts (which are not in issue),
• Section II.A.1., providing a review of the current standard for review of agency decisions (which is not subject to reasonable dispute), and
• Section II.A.2., going through the history of the deference doctrine (which is, again, not in issue).
In contrast, "a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices." State v. Lynch, 2016 WI 66, ¶ 143, 371 Wis.2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, JJ., concurring in part, dissenting in part) (citing Hoffer Props., LLC v. State, Dep't of Transp., 2016 WI 5, 366 Wis.2d 372, 874 N.W.2d 533 ); In re Disciplinary Proceedings Against Riley, 2016 WI 70, ¶¶ 92-95, 371 Wis.2d 311, 882 N.W.2d 820 (Abrahamson, J., concurring).
A majority of justices do not embrace the reasoning or constitutional analysis set forth in Sections II.A.3 through II.A.6 of the majority/lead opinion. See majority/lead op., ¶ 3 n.4. The reasoning the majority/lead opinion presents for dispatching with our deference doctrine represents the reasoning of Justices Rebecca Grassl Bradley and Daniel Kelly only.

Wis. Stat. § 70.995 (1993-94) provides in relevant part:
(1) APPLICABILITY. (a) In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit ...
...
(d) Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget are not manufacturing for this section.
(2) FURTHER CLASSIFICATION. In addition to the criteria set forth in sub. (1), property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget. ... :
...
j) 27-Printing, publishing and allied industries.
...
(v) 39-Miscellaneous manufacturing industries.

We refer to the opinion as a lead opinion in Part I because its constitutional analysis has not garnered the support of a majority of the court. We refer to the opinion as that of "the court" or as the "majority opinion" in Part II because its statutory analysis does have the support of a majority of the court.

See, e.g., lead op., ¶ 34 ("[Great weight deference] developed as a home-grown doctrine within the judiciary ...."); id., ¶ 70 ("[G]reat weight deference is a creature of our own making ...."); id., ¶ 40 ("[J]ust like 'great weight' deference, 'due weight' deference has become an integral, and therefore unavoidable, part of the framework within which we review an administrative agency's conclusions of law."); id., ¶ 3 ("We have [ ] decided to end our practice of deferring to administrative agencies' conclusions of law.").